

Danielle Healey
Direct Dial: 713-212-2697
dhealey@spencerfane.com

File No. 5512920.1

June 20, 2025

**VIA ECF**

The Honorable Arun Subramanian, U.S.D.J.
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Metro Light & Power LLC v. Furnlite, et al.;* No. 1:24-cv-03713-AS
      Plaintiff's Letter Motion to Compel Discovery

The Court will hold a remote discovery conference on **July 7, 2025 at 4:00 PM**. The parties should dial in by calling (646) 453-4442 and entering the Phone Conference ID: **460 249 343**, followed by the pound (#) sign.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: July 2, 2025

The Honorable Arun Subramanian, U.S.D.J.
June 20, 2025
Page 1



Dear Judge Subramanian,

 Plaintiff Metro Light & Power LLC ("Metro") moves to compel Defendants Furnlite, Inc. and Group Dekko, Inc. (collectively, "Defendants") to comply with their discovery obligations and to amend the schedule. Metro has attempted repeatedly to resolve these issues with Defendants.

 Defendants did not make a meaningful document production until early May. Upon review of this production, Metro learned for the first time that by July 2019, Defendants had begun a deliberate plan to copy from Metro's website to redesign their products as cheaper alternatives to Metro's products. After Dekko acquired Furnlite, it found that Furnlite's products were dated, and it was losing sales to Metro. Dekko's vice-president of advanced product development directed Furnlite in a months-long effort to design a new line of cover trim plates based on Metro's line and look. Defendants copied photos from Metro's website into their design documents, surreptitiously obtained samples through intermediaries, and began production of new designs based on Metro designs and aesthetics, not just the copycat products in the current complaint. Drawings of these copycat and other very similar Furnlite products were sent to Furnlite's factories. On June 9, 2025, Dekko announced yet more new products that copy from Metro's photos and artistic elements.

 Defendants obstructed discovery by marking every document (about 10,000 pages) and transcript attorneys' eyes only, failing to provide initial disclosures, producing their corporate witnesses with little or no preparation, and withholding certain categories of financial information based on a unilateral determination of discoverability. They also withheld drawings of products made for manufacturing, which likely themselves infringe Metro's separate copyright on drawings of its products. By denying Metro's president and designer access to the production, Metro's counsel's preparation has suffered from lack of necessary client input. The lack of initial disclosures have shielded important witnesses. Lack of preparation by corporate representatives, who testified only on their personal knowledge, left large gaps in the facts. For example, despite deposing two different representatives on the topic of who designed the infringing products, the corporate witnesses have provided conflicting, incomplete, answers. Failure to produce financial and other information on products in the design documents for its Metro line has left gaps in Metro's damages expert report. Failing to produce drawings cuts off direct infringement claims based on Metro's drawings.

 Prior to Defendants' May document production, Metro pursued this case to enjoin Defendants from copying its biggest product (now more than one-half of its sales). Discovery, however, has revealed a years-long course of unfair and illegal conduct to capture projects by competing against Metro with Metro's own designs and aesthetic. Metro needs relief against the repeated copying and lost sales. Metro has obtained copyright registrations for the 2018 website pictures. Full relief requires that Metro amend its complaint to include Defendants' early design documents and products, and new products announced on June 9, 2025.

A.  **Factual Background**

 On March 3, 2025, the parties served discovery requests. Defendants repeatedly delayed, and did not make a substantive production of documents until May 2 with a second production coming on May 8, 2025. ***To the utter surprise of Metro***, Defendants produced over 10,000 pages detailing a deliberate course of conduct to copy from Metro. Defendants' entire production—including public documents and other documents not remotely confidential—was labelled "attorneys' eyes only," over Metro's objections. Incredibly, the production did not include CAD and other drawings for manufacturing.

 Metro first served a 30(b)(6) notice on April 7. Due to delays in document production, the first witness was deposed on May 15. (The notice was re-served once the first depositions were scheduled, **Exhibit A.)** This was Dekko's current sales director, who had little personal knowledge of her topic and had done nothing to educate herself. Three of the corporate witnesses retired in 2020, 2021, and 2024 respectively, reviewed no

The Honorable Arun Subramanian, U.S.D.J.
June 20, 2025
Page 2



documents and did not talk to others involved in the matter. But for minimal preparation of a few minutes on some topics by two other deponents still employed by Defendants, the witnesses have done no preparation on the substance of their 30(b)(6) topics. The deliberate lack of preparation has left critical gaps and conflicts in Defendants' evidence, for example, on who designed the product pictured in the complaint, and who and when Defendants accessed Metro's website. Defendants refused to produce a witness on profits and licenses. Further, they broke up the topics among so many witnesses it has been burdensome and expensive. For this motion, Metro focuses on topics 1,4, 7, 9, 14, 24 and 25. Metro respectfully asks the Court to order the Defendants to produce and prepare a witness for topics 1,4, 7, 9, 14, 24, and 25, including all of the products in their New Product Design documents (which are the narrow versions of the 730 series and the narrow versions where there are both broad and narrow versions in the 740, 760, 770, 780, 1200, 1600, 22200, and OT-MP-12 series), and new products announced on June 9, which are derivative infringements of Metro's copyrighted materials.

On June 12, Rusty Helms, former general manager and product designer for Furnlite (retired 2020) was presented as a witness. He said CAD and other drawings were made of all products. No CAD or other drawings have been produced even though Metro has sued on a copyright registration on drawings on its website and produced drawings. The witness said he doubted whether a product sample previously sent to Metro during negotiations , was a production piece since it was poorly made and did not seem to fit together. Metro has asked for product samples, delivered at its expense. Defendants refused, saying counsel must travel to the samples. (Furnlite's cover trim plates prices range from about $6.00-$20.00, they are small and light)

Defendants have not removed the AEO designation from depositions about the design and sales of the products nor the 10,000 pages of document production. The protective order does not permit blanket assertions of AEO status. (Metro is not concerned about the "confidential" designation). Defendants' current products are on Furnlite's website with prices. A stop-gap deal made to allow some access is burdensome.

Defendants have also thwarted Metro's discovery of witnesses by refusing to provide initial disclosures. Despite the express language of Fed. R. Civ. P. 26(a), they argue this Court does not require them. *See* Fed. R. Civ. P. 26(a)(1)(A) ("Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, *a party must, without awaiting a discovery request, provide to the other parties . . .*" the initial disclosures). In a June 11 letter, Defendants said they would "promptly" provide them, but to date have neither produced initial disclosures nor committed to a deadline for production as requested by Metro.

Metro also recently learned that Defendants unilaterally limited production of critical financial and certain other information to a single product (which they refer to as the "OT-TP-12 series Faceplate," their "M-Power Trim Plate," or (incredibly) their "Metro version"), despite the clear relevance of other infringing products, such as the "Metro Killer" cover trim plates, among others. Metro documented these issues in a letter sent to Defendants on June 4 (**Exhibit B**). Instead of participating in a good faith meet and confer, during a video conference on June 6, Defendants stated they would respond to the points raised in the June 4 letter, in writing, which they did on June 11 (**Exhibit C**). Discovery to date shows the relevance of the redesigned products (e.g., new "narrow" or mini versions of prior existing products) and newly designed products. For example, in GDF0008232 (**Exhibit D**)), a New Product Design tracker, Defendants list their series 730 (narrow), 740, 750, 760, 770, 780, 1200, 1600, and 22200. The NPD tracking documents show Defendants began copying Metro's products as early as August 2019, for example:

| 53 | 9/20/2019 | FC - ? | His and Hers "3way" Switch function? | | Dan | What does to competition offer? Metro product in review. Review COMPLETED | 10/10/2019 |
|---|---|---|---|---|---|---|---|

HOU 6787176.4

The Honorable Arun Subramanian, U.S.D.J.
June 20, 2025
Page 3



[table image showing: 59 | 8/13/2019 | MISC | Review Metro Products for NPD opportunities | Furnlite Team | Samples received 9/20/19. Product teardown/review completed | 12/21/2019]

Additionally, photos from Metro's website are interspersed in the design documents.

Defendants claim their sales are too small to justify this discovery. In the context of a 1000 employee company with multiple brands and product lines, Defendants consider this lawsuit trivial. Defendants' new product announcement on June 9, their actions to inflate Metro's discovery costs, and withhold key evidence, materially prejudice Metro. The scope of Defendants wrongful conduct is essential to the injunction and other remedies in this case – which are critically important to Metro's owner and its 14 employees.

**B. Relief Requested**

1. An order requiring Defendants comply with the Protective Order entered in this matter for AEO materials or that their "AEO" designations are waived for non-compliance.

1. An order requiring Defendants produce initial disclosures under Rule 26(a) by June 25, 2025.

2. An order requiring Defendants produce a new corporate witness on 30(b)(6) topics 1, 4, 7, 9, 14 and 24 and 25 at their expense and that future corporate representatives be prepared on their topics.

3. Documentation evidencing the sales, revenue, costs, losses, and profits of their 730, 740, 760, 770, 780, 1200, 1600, and 22200 series since January 1, 2019, including the OTTP faceplates, OTMP faceplates, and the accompanying power units because the cover plates drive their sales.

4. Samples of all relevant Furnlite products delivered to Metro's counsel at Metro's expense.

5. The CAD and other design drawings used to produce and manufacture the products.

6. All other materials Defendants agreed to promptly produce in their June 11, 2025 letter.

7. An order vacating the schedule and requiring the parties' meet and confer within three business days to propose a new schedule, which allows Metro to file a supplemental expert report and motion for leave amend its complaint based on the recent discovery and new product announcement on June 9.

**C. Conclusion**

Metro respectfully requests that its requested relief be granted.

Sincerely,


*Danielle J. Healey*

HOU 6787176.4