**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

METRO LIGHT AND POWER LLC,     )
                                        )

            Plaintiff,         )     Case No. 1:24-cv-03713-AS
                                         )

v.                                    )

                                       )
FURNLITE INC. and GROUP DEKKO INC.,     )

                                       )
           Defendants.     )

**PLAINTIFF METRO LIGHT AND POWER LLC'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO VACATE ORDER BASED ON NEW
EVIDENCE TO PREVENT MANIFEST INJUSTICE**

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, Plaintiff, Metro Light and

Power LLC ("Metro") respectfully requests the Court vacate its March 11, 2026 Opinion and Order

(Dkt. 106) granting Defendants' Motion to Dismiss (Dkt. 52).

Metro's Motion to Vacate is based on newly discovered evidence -- two November 25,

2025 Dekko design patents and their March 2024 applications -- which show that Dekko has

argued and prevailed in the United States Patent and Trademark Office on the position that the

faceplates in issue were entirely ornamental and not functional. Not only should this evidence have

been produced as requested in discovery, which would have allowed the Court to consider these

party admissions, but the issuance of the patents invokes the principal of judicial estoppel.

Metro asked in discovery for design patent applications and the identity of designer of the

faceplates in issue. Dekko withheld the requested information from Metro. The new evidence

directly contradicts the arguments Dekko made in its Motion to Dismiss the First Amended

Complaint and its Motion to Dismiss the Second Amended Complaint. Vacatur is necessary to

prevent manifest injustice. Metro submits this Memorandum of Law in Support of its Motion to

Vacate under Rule 54(b). To the extent Metro's Motion to Vacate falls under the Court's rule on motions for reconsideration, Metro also respectfully requests waiver of the time limit in Local Civil Rule 6.3 because it did not discover the withheld design patents until April 30, 2026.

## INTRODUCTION

Metro filed its First Amended Complaint on February 18, 2025, asserting claims for copyright infringement and unfair competition related to Dekko's unlawful copying of Metro's images of faceplates and derivative products. Dkt. 49. Dekko responded with its second Motion to Dismiss[1] Metro's claims, arguing that Metro's copyrights cannot be applied to the bezel faceplates because the faceplate is a useful article which "lacks any artistic features that could be identified separately from the face plate's utilitarian function." Dkt. 53 at 5-15 (Dekko's March 28, 2025 Memorandum in Support of Motion to Dismiss). The Court adopted Dekko's argument and dismissed Metro's claim for derivative copyright infringement, finding that the faceplates are functional, not ornamental, and the ornamental portion (if any) cannot be separated from the functional aspects of the product. Dkt. 106 at 2-3

Unbeknownst to Metro (and the Court), Dekko had filed two design patent applications with the USPTO a year earlier (March 24, 2024) in which Dekko took the opposite position from its February 2025 Motion to Dismiss. The design patents only became public when they issued on November 25, 2025. Although Metro specifically requested design patent applications and information about the design and designer of the accused faceplates through discovery, Dekko failed to produce the applications and failed to identify their designer ("inventor"). Metro

---

[1] Defendant Furnlite, Inc. filed its first Motion to Dismiss on June 17, 2024 under Rules 12(b)(3) and 13, arguing that this matter should be dismissed in favor of a matter filed in the Northern District of Indiana by Group Dekko, Inc. and Furnlite. Dkt. 22. Ultimately, the matters were consolidated into this case. Dkt. 47.

discovered Dekko's new design patents through its own search on April 30, 2026. *See* Declaration of Daniel Deutsch at ¶ 13.

Dekko's March 24, 2024 design patent applications are now U.S. Patent No. D1,102,874 ("the '874 patent") and U.S. Patent No. D1,102,875 ("the '875  patent"). Exhibit 1 ("Faceplate for an Electrical Receptacle") and Exhibit 2 ("Bezel Faceplate for an Electrical Receptacle"), respectively.[2] The new patents directly contradict the arguments Dekko made in its second Motion to Dismiss (Dkt. 53 at 5-15) because the claims of both patents cover all aspects of the faceplates as ornamental, non-functional features.

Design patents are only available for "non-functional aspects of ornamental designs" and do not protect functional features. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1370–71 (Fed. Cir. 2006). Here, Dekko's design patents have multiple claims (figures) covering the entirety of the faceplate designs, so that each design patent's claims have the same scope as Metro's copyright claim on the derivative faceplates. While Dekko and Furnlite have many design patents on different types of products, including faceplates, what is remarkable about the two new design patents is that 1) they claim the ***same designs*** in dispute here; and 2) ***they claim every feature of the faceplate is ornamental***. As a result, Dekko's new design patent applications are a statement to the USPTO that the entirety of the faceplates amount to non-functional, ornamental designs.

Because the Court's March 11, 2026 Opinion and Order (Dkt. 106), dismissing Metro's copyright infringement claims, adopted Dekko's contradictory argument and lacked the benefit of this newly discovered evidence, the Opinion and Order must be vacated to prevent manifest

---

[2] Exhibits 1-10 are attached to the Declaration of Danielle J. Healey in Support of Metro's Motion to Vacate. Exhibits 11-15 are attached to the Declaration of Daniel Deutsch in Support of Metro's Motion to Vacate.

injustice. If the Order is allowed to remain, Defendants will have reaped the benefit of conflicting representations and different outcomes in different forums to their advantage, causing manifest injustice to Metro.  Dekko will have design patents it can show customers to cause concern about infringement by Metro's bezel and other faceplate designs. Dekko could even, in theory, threaten to bar Metro from making, using, selling, or importing its own products in or to the United States. After the Order is vacated, the Court should review Dekko's Motion to Dismiss (Dkt. 52) in light of the new evidence, find that Dekko is judicially estopped here from contradicting its successful patent applications, and deny Dekko's Motion to Dismiss in its entirety.  Metro's Motion for Leave to file its Second Amended Complaint (Dkt. 81) should be granted, and Metro's Motion for Leave to File a Rebuttal Report (Dkt. 93) should be granted.

## ARGUMENTS AND AUTHORITIES

**A.      Rule 54(b) Gives the Court Continuing Authority over its March 11, 2026 Order**

Fed. R. Civ. P. 54(b) provides that a district court maintains control over its interlocutory orders until final judgment.  The rule empowers courts to withdraw an interlocutory order when there are strong reasons to do so. "So long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982).

When new evidence is found, the Court should look at the non-cumulative impact of the new evidence, the diligence of the movant, and the manifest injustice if the order is permitted to stand. *See, e.g., U.S. v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (considering a motion for post judgment relief under Rule 60(b)). Here, the new, non-cumulative evidence of Dekko's design patents reveals Dekko's representation to the USPTO that the designs

at issue are ornamental, not functional.[3] Having been awarded its design patents based on that position and as explained below, Dekko is judicially estopped from arguing otherwise in this Court. *See, e.g., Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997). The Court's Order dismissing Metro's claims for copyright infringement, based on an argument Dekko was judicially estopped from making, and evidence it failed to produce, must be vacated (Dkt. 106).

### 1.    *Second Circuit law favors relief here.*

A court may revisit its prior decisions and depart from them "for cogent or compelling reasons including an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009). That is the situation here. The existence of Dekko's design patents is highly material to the issues considered in the Court's Order and Opinion, particularly insofar as the ornamental, non-functional nature and copyrightability of Metro's faceplates are concerned. Dkt. 106. Dekko's conduct has worked a manifest injustice on Metro as Dekko now owns design patents that give it not just the credit for Metro's designs but that Dekko may even try to use to intimidate Metro customers. In theory, Dekko could even try to exclude Metro's manufacture and sale of its own designs from the marketplace.[4] *See* Exhibit 15 (demonstrative showing an implementation of the designs rendered from the patent drawings). Leaving the Order in place despite Metro's diligence in attempting to discover the evidence concealed by Dekko would be manifestly unjust.  To do so would also violate principles of judicial estoppel because Dekko has played fast and loose with the Court.

### 2.    *Waiver of the timing requirement of Local 6.3 is appropriate.*

---

[3] Even if Dekko were to argue small differences, Dekko's product would be seen by an ordinary observer as having the same look as Metro's product such that one would see the same design in both the design patents and the products sold by Metro and Furnlite.

[4] Since the case has was stayed last summer, there has been no further discovery, so Metro has no way to know how Dekko has used the design patents.

Metro is aware of this Court's time limit under its procedures to file motions for reconsideration. Local Civil Rule 6.3. However, here, where Dekko failed to disclose evidence as required by the rules of discovery, violated its disclosure obligations in the USPTO, and was not candid with this Court, and given the resulting fundamental unfairness of the outcome caused by Dekko's violations, the Court should excuse Metro from the time limits in its local practices.

Indeed, it would be manifestly unfair for the Court to deny relief to Metro in these circumstances based on Dekko's discovery conduct and its non-disclosure of conflicting positions. *See, e.g., Hines v. BMG Rights Mgmt. (US) LLC*, 711 F. Supp. 3d 200, 204 (S.D.N.Y. 2024) ("the timeliness requirement in Local Rule 6.3 does not apply if another 'statute or rule (such as Fed. R. Civ. P. . . . 59)' provides otherwise"); *see also Assoc. for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) (district court has discretion to depart from its local rules "if adherence to the rule would 'cause an unjust result.'"). Dekko's design patents are new, material, and non-cumulative evidence that, despite Metro's diligence in discovery, could not have been uncovered earlier.

**B.      Metro's Tried to Discover the Origin Design Patent Applications and Designer**

Metro asked for design patent applications on the accused designs in discovery, asked for corporate representative depositions on the designer of the Dekko faceplates, sent an interrogatory for the names of all people with knowledge, and filed a motion to compel Defendants to produce initial disclosures (which they had refused to do). *See* Dkt. 73 (Letter Motion to Compel Discovery). Dekko failed to produce the patent applications or identify the inventor.

Metro's First Request for Production was served to Dekko on March 3, 2025. Request No. 1 specifically requested Dekko's design patent applications:

> **REQUEST FOR PRODUCTION NO. 1**: All non-privileged Documents and Communications sent by or to any of Defendants' agents, contractors, customers, designers, distributors, employees, manufacturers, or prospective customers concerning, referencing or relating to the Dekko Faceplates or Dekko FPDUs, during the Relevant Time Period. (This includes but it not limited to emails, attachments to emails, design patent applications, documents and photos from trade shows, regarding all designs proposed for the Dekko Faceplates).

Exhibit 3 (Dekko's Response to Metro's First Request for Production). Similarly, Request No. 3 asked Dekko to produce all "non-privileged Documents and Communications regarding all designs for the Dekko Faceplates," and Request No. 9 sought documents "from any source . . . that show or describe a faceplate for an FPDU that has a thin bezel outline around the spaces for the functional components." *Id.* Dekko's first production was limited to 33 pages of documents from the earlier Indiana case. The remainder of Dekko's document production happened in May and June 2025. It did not produce the design patent applications.

Metro's First Interrogatories to Dekko, also served March 3, 2025, sought the names of each person with knowledge of facts related to this lawsuit, including specifically anyone with "knowledge on the design, . . . of any and all products initiatives or discussions regarding competition with Metro, including but not limited to Metro's Thin Bezel Faceplate." Exhibit 4 (Dekko's Response to Metro's First Interrogatories at Interrogatory No. 1). When Metro's first round of discovery requests were served, Dekko's patent applications had been on file for nearly a year. Exhibits 1 and 2. Yet, Dekko did not provide or identify either patent application in response to the requests, nor did it identify the inventor (Russell Taritas) in its interrogatory responses or in

its Initial Disclosures served July 8, 2025. Exhibit 5 (Dekko Initial Disclosures were only served after Court ordered Dekko to provide them (Dkt. 79)).

Further, Metro asked for a corporate representative deposition on the topics of "the design of the accused infringing products" and the "[a]ctions, steps, or measures (including new designs and products) by [Dekko] to compete with Metro's Thin-Bezel Faceplates." Exhibit 6 (Metro's Deposition Notice to Dekko at Topics 7 and 9). Dekko designated Keith Helms, former general manager of Furnlite on the requested topics. Mr. Helms was not produced for deposition until June 12 and 13, 2025. Mr. Helms retired in 2020 and had no knowledge of who designed the Dekko/Furnlite faceplates. Exhibit 7 (Transcript of Keith Helms Deposition at 312:15-22 and 360:13-18). Moreover, the law firm that filed the design patent applications, Taylor & Edelstein, PC, has been involved in this dispute since at least August 2023. Exhibits 1 and 2 (identifying attorneys of record); Exhibit 8 (August 31, 2023 letter from Todd Taylor); *see also* Dkt. 22-1 (Declaration of Todd Taylor in Support of Dekko's Motion to Dismiss or Transfer). Dekko's counsel never notified the Court about its pending design patent applications.

**C.      Judicial Estoppel Prevents Dekko from Reaping the Benefit of its Duplicity**

The Court's March 11 Order was based on Dekko's arguments that the faceplate was not ornamental but only functional, and that even if the Metro faceplate had ornamental features, they could not be separated from its function. Dekko argued that because the faceplate was functional, *Star Athletica* applied, which only permitted copyright protection for designs that were separate from the parts found to be functional. However, the Dekko design patent applications—now issued patents—claim every feature of the faceplate as ornamental.  Dekko made contrary arguments to this Court and the USPTO without disclosing to either body that it was taking opposite positions in the other forum.

The Second Circuit's law on judicial estoppel bars litigants from playing fast and loose with the Court and the administrative agency. This Court and the USPTO each adopted Dekko's contradictory arguments and unsurprisingly came to contradictory results. Dekko got design patents from the USPTO, presumed to be valid legal monopolies over Metro's designs, while the opposite position here resulted in dismissal of Metro's derivative infringement claims.

At a minimum, Dekko should have informed this Court and the USPTO of its conflicting positions on the ornamental nature of the rectangular bezel faceplate. That omission was a violation of Dekko's discovery and disclosure obligations in this Court and the USPTO's rules on disclosure of inconsistent arguments, as well as known prior art (37 U.S.C. § 1.56). Dekko could not have gotten the design patents had it disclosed its Court filings arguing the designs were functional to the USPTO, and Metro was entitled to show the Court that Dekko had already claimed its designs were ornamental.

"Judicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding." *Simon*, 128 F.3d at 72. Courts invoke judicial estoppel to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Id.* (citing *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993)). Judicial estoppel extends to administrative or quasi-judicial proceedings, including proceedings before the United States Patent and Trademark Office ("USPTO"). *Id.*; *see also Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996) (applying judicial estoppel to workers' compensation proceedings); *Yeda Research and Dev. Co. Ltd. v. Imclone Sys. Inc.*,

443 F.Supp.2d 570, 624 (S.D.N.Y. 2006) (applying judicial estoppel to statements made to the USPTO).

Dekko represented to the USPTO that its claimed faceplates are Dekko's "new, original, and ornamental design for a [BEZEL] FACEPLATE FOR AN ELECTRICAL RECEPTACLE." Exhibit 1 at 1 (emphasis in original); Exhibit 2 at 1 (emphasis in original). Dekko's applications were accompanied by the required inventor's oaths under 37 C.F.R. § 1.63 and carried the duty of candor to the USPTO set forth in 37 C.F.R. § 1.56. Moreover, the Design Patent Application Transmittal form accompanying Dekko's application states the purpose of a design patent: "A 'design patent' protects an article's **ornamental appearance** (e.g., the way an article looks) (35 U.S.C. § 171), while a 'utility patent' protects the way an article is used and works (35 U.S.C. § 101). The ornamental appearance of an article includes its shape/configuration or surface ornamentation upon the article, or both." *See, e.g.*, Exhibit 9, Transmittal Form for the '874 patent application. The entire article does not have to be ornamental, only the claimed features, but here, because Dekko claimed the *entire faceplate design* for patent protection, it has conceded the entire faceplate is ornamental. This makes Metro's point: the faceplates are decorations that are ornamental not functional. Dekko's own arguments show they are a decoration protectable by copyright.

According to Dekko's Motion to Dismiss, "[t]he face plate is not merely to portray the appearance of the article – it has the function of protecting the outlets – and it is not conveying information. Accordingly, *it is a useful article and nothing more*." Dkt. 53 at 14. Yet, in its application to the UPTO, for the purpose of obtaining a limited monopoly over the design of

10

Metro's faceplates, Dekko claimed the entirety of the faceplate as ornamental, recognizing it is a decoration with no functional features:



Exhibit 2 at Figs. 1 and 3. The entirety of Dekko's claimed design is shown in solid lines, meaning the entirety of the figure is claimed as the ornamental design. *See* MPEP 1503.01 at ¶ 15.61.01 ("Full lines in the drawing show the claimed design. Broken lines are used for numerous purposes."). This is reinforced by the other five figures claimed to be ornamental. Indeed, its retired director of advanced product development testified the faceplate served no purpose, aside from aesthetics. Exhibit 10 (Deposition of Daniel Hayes at 70-74).

Dekko's positions in the USPTO cannot be reconciled with Dekko's arguments here. The Court's Order and Opinion must be vacated, otherwise the inconsistent results in the two forums will impact judicial integrity to impose an unfair detriment on Metro. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (addressing the factors that typically inform whether judicial estoppel

11

applies, including "the perception that either the first or the second court was misled" and the unfair detriment to the opposing party).

**D.    Dekko Design Patents Show Metro's Faceplate Designs are Copyrightable.[5]**

Metro's First Amended Complaint asserted two copyrights: VAu 1-523-473 covering Metro's website and VAu 1-523-017 covering "A Single Six Page Unpublished Illustration featuring [Metro's] Bezel Configurations and Specs." Dkt. 49. Metro alleged that Dekko's faceplates were illegal derivative works of Metro's copyrighted images. *Id.* In response to Dekko's second Motion to Dismiss, the Court dismissed Metro's copyright claim that Dekko copied Metro's copyrighted images of faceplates based upon its finding that the faceplates are not copyrightable subject matter because they cannot be perceived as a work of art separate from a useful article. Dekko's patent filings and resulting design patents contradict the Court's findings. Had the Court been able to consider Dekko's patents, it would not have reached the same result on the function or the ornamental nature of Metro's faceplate and would not have dismissed Metro's claims.

**1.    *Metro's faceplate is not a "useful article."***

As an initial matter, neither Metro's nor Dekko's faceplate is a "useful article." Useful articles have "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Dekko's patents make clear that the entirety of the faceplate is ornamental, meaning non-functional. Exhibits 1 and 2; *Amini Innovation*, 439 F.3d at 1370-71 ("A design patent protects the non-functional aspects of an ornamental design. . . An aspect is functional 'if it is essential to the use or purpose of the article.'"). Because the faceplate

---

[5] Metro addresses the copyrightability of the disputed faceplates in its Response in Opposition to Dekko's third Motion to Dismiss, Dkt. 117 (filed May 21, 2026) and incorporates those arguments by reference here.

is a non-functional "pictorial, graphic, [or] sculptural work," rather than a useful article, it is eligible for copyright protection on its own, and the analysis under *Star Athletica L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405 (2017), is inapplicable.

### 2.    *If the faceplate is a useful article, it is separable from the utilitarian aspects.*

Even if the faceplate were considered a useful article based on its ability to be incorporated into a useful article, the figures in Dekko's design patents expressly show that the faceplate "can be identified separately from, and [is] capable of existing independently of, the utilitarian aspects of" the electrical receptacle under 17 U.S.C. § 101, as that phrase has been interpreted by the Supreme Court in *Star Athletica* and applied by this Court. Dkt. 106 at 2-3. Dekko's Motion to Dismiss arguments to the contrary are entirely lacking in merit in view of design patents and their figures.[6]

Dekko argued in this case that Metro's bezel faceplate "has no features that could be 'identified separately from . . . the utilitarian aspects of the article," Dkt. 53 at 4. But Dekko's patent drawings show the faceplates identified separately from the electrical receptacle and Dekko claims the faceplates are entirely ornamental. Dekko cannot be allowed to argue to the USPTO that the faceplate is a separate ornament entitled to patent protection as a stand-alone item while simultaneously arguing to this Court that the faceplate cannot be identified separately from the electrical receptacle it may cover.

### CONCLUSION

For at least the reasons set forth above, in Metro's Response in Opposition to Dekko's second Motion to Dismiss (Dkt. 55), which it incorporates by reference, and in Metro's Response

---

[6] Metro incorporates by reference its April 11, 2025 Response in Opposition (Dkt. 55) to Dekko's Motion to Dismiss (Dkt. 52) and Memorandum in Support (Dkt. 53) with respect to the utility of Metro's faceplates.

in Opposition to Dekko's third Motion to Dismiss (Dkt. 117), the Court's Opinion and Order granting Dekko's Motion to Dismiss should be vacated. Subsequently, Dekko's Motion to Dismiss (Dkt. 53) should be denied in its entirety, Plaintiff's Motion for Leave to File its Second Amended Complaint (Dkt. 81) should be granted, and Plaintiff's Motion for Leave to File a Rebuttal Report (Dkt. 93) should be granted.

Dated: June 1, 2026

*/s/ Danielle J. Healey*
Elisha J. Kobre (SDNY #EK1348)
SHEPPARD MULLIN RICHTER
& HAMPTON LLP
2200 Ross Ave., 20th Floor
Dallas, Texas 75201
Telephone: 469-391-7412
Facsimile: 469-391-7401
Email: ekobre@sheppardmullin.com

Danielle J. Healey (*pro hac vice*)
Sadaf Deedar (*pro hac vice*)
SPENCER FANE LLP
3040 Post Oak Blvd, Suite 1400
Houston, Texas 77056
Telephone: 713-552-1234
Facsimile: 713-963-0859
Email: dhealey@spencerfane.com
Email: sdeedar@spencerfane.com

Anna G. Schuler (*pro hac vice*)
SPENCER FANE LLP
6201 College Blvd, Suite 500
Overland Park, Kansas 66211
Telephone: 816-292-8862
Facsimile: 913-345-0736
Email: aschuler@spencerfane.com

John B. Allen (*pro hac vice*)
SPENCER FANE LLP
10 Exchange Place, Suite 11
Salt Lake City, UT 84111
Telephone (801) 521-9000
Facsimile (801) 363-0400

Email: joallen@spencerfane.com

Brian Medich (*pro hac vice*)
SPENCER FANE LLP
900 16th Street NW, Suite 400
Washington DC 20006
Telephone (202) 921-1532
Facsimile (202) 595-0581
Email: bmedich@spencerfane.com

***Attorneys for Plaintiff***
***METRO LIGHT & POWER LLP***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on June 1, 2026, to all parties of record via the Court's CM/ECF system.

/s/ *Danielle J. Healey*
Danielle J. Healey

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum contains 3,718 words, excluding the caption, tables of contents and authorities, certificates, and signature blocks.

/s/ *Danielle J. Healey*
Danielle J. Healey