UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

METRO LIGHT AND POWER LLC,

                            Plaintiff,

            v.

FURNLITE, INC. and GROUP DEKKO, INC.,

                            Defendants.

No. 1:24-cv-03713-AS

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO VACATE**

## **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   ARGUMENT ...........................................................................................2

    A.    The Legal Standards for a Motion for Reconsideration Apply. .............................2

    B.    Metro's Motion for Reconsideration is Untimely Under Local Rule 6.3. .............2

    C.    The Design Patents Are Not "Newly Discovered" Evidence.................................4

    D.    Metro's Accusations of Discovery Misconduct Are Unfounded and Could Not, Even If True, Excuse Metro's Lack of Diligence. ..................................................5

    E.    Judicial Estoppel Does Not Apply Because Defendants' Legal Positions With Respect to Design Patents and Copyright Are Not Inconsistent...........................8

    F.    Defendants' Design Patents Do Not Affect the Court's Conclusion That Metro's Products Are Not Copyrightable Under *Star Athletica*.................................10

III.  CONCLUSION........................................................................................11

4934-5334-8280, v. 1

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amini Innovation Corp. v. Anthony California, Inc.*,
439 F.3d 1365 (Fed. Cir. 2006)…………………………….….........................11

*Cf. Curcio v. Roosevelt Union Free Sch. Dist.*,
283 F.R.D. 102 (E.D.N.Y. 2012)………………………..……………………...5

*Chevron Corp. v. Donziger*,
833 F.3d 74 (2d Cir. 2016)………………………………..…………………..…..8-9

*Hines v. BMG Rts. Mgmt. (US) LLC*,
711 F. Supp. 3d 200 (S.D.N.Y. 2024)…………………………..…………..…3

*In re Fosamax Prods. Liab. Litig.*,
815 F. Supp. 2d 649 (S.D.N.Y. 2011)…………………………..…………..…3

*In re Platinum-Beechwood Litig.*,
377 F. Supp. 3d 414 (S.D.N.Y. 2019)…………………………………..…...3

*Lanard Toys Limited v. Dolgencorp LLC*,
958 F.3d 1337 (Fed. Cir. 2020)...……………………………….…………..…2, 8, 9

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
293 F. Supp. 3d 394 (S.D.N.Y. 2018)…………………………..…….……..…3

*Palin v. N.Y. Times Co.*,
482 F. Supp. 3d 208 (S.D.N.Y. 2020)…………………………….…....................3

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
369 F.3d 113 (2d Cir. 2004)………………………………………………...9

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995)......……………………………….…………..…….…………2

*Space Hunters, Inc. v. United States*,
500 F. App'x 76 (2d Cir. 2012)……………………………………………...4

*Star Athletica v. Varsity Brands, Inc.*,
580 U.S. 405 (2017)…………………………………..…………….…...…1, 8, 9, 10, 11

4934-5334-8280, v. 1

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)............. …………………………..………..…2


**RULES & STATUTES**

37 C.F.R. § 1.56………….…………………………………………..……………....6

17 U.S.C. § 101………….…………………………………………..…………....8

35 U.S.C. § 171………….……………………………………………………1, 8, 10

Fed. R. Civ. P. 54(b)………….………………………………..………2, 3

Fed. R. Civ. P. 59(e)………….…………………………………..…………3

Fed. R. Civ. P. 60(b)………….…………………………..………………………3

Local Civil Rule 6.3………….………………………………….............1, 2, 3

Rule 30(b)(6)………….…………………………………….………....7


**MISCELLANEOUS**

*Group Dekko, Inc. v. Metro Light & Power, LLC*, No. 1:23-cv-00465…………………………...4

Manual of Patent Examining Procedure (MPEP) § 1502……….……………….……10

4934-5334-8280, v. 1

This Court correctly dismissed Metro Light and Power LLC's ("Metro") copyright infringement claims in its March 11, 2026, Opinion and Order.  (*See* ECF No. 106 ("Dismissal Order") at 2-3.)  Defendants Furnlite, Inc. and Group Dekko, Inc. (collectively, "Defendants") respectfully submit this Memorandum in Opposition to Plaintiff's Motion to Vacate (ECF No. 121, the "MTV").

## I.     PRELIMINARY STATEMENT

Metro asks this Court to vacate its Dismissal Order based on two design patents that were publicly available months before the Court's ruling—despite Metro having been aware of Defendants' design patents with similar subject matter for nearly three years and despite design patents having no bearing on copyright law.  Metro's theory—that these design patents somehow prove its copyrights are valid—misunderstands the fundamental difference between patent and copyright law.  The motion fails on every front.

*First*, the motion is untimely.  Local Civil Rule 6.3 requires motions for reconsideration to be filed within *fourteen* (14) days.  Metro filed *sixty-eight* (68) days late.  Its excuse—that it only "discovered" the patents in April 2026—rings hollow given its actual knowledge of Defendants' patenting practices since 2023 and the patents' public availability since November 2025.

*Second*, the design patents are not "new evidence."  Metro's CEO admits he was aware of Defendants' design patents in 2023 but "quickly disregarded" them.  The specific patents Metro now relies on were publicly available on the USPTO website more than three months before the Court's Dismissal Order.  Metro cannot claim "new" discovery for evidence sitting in plain sight that any due diligence would have uncovered.

*Third*, the design patents are legally irrelevant.  Design patent law (35 U.S.C. § 171) and copyright "useful article" doctrine (*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405 (2017)) involve entirely different legal standards.  A product can qualify for design patent

protection and simultaneously be an unprotectable "useful article" under copyright law—as expressly shown by *Lanard Toys Limited v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020). Defendants have taken no inconsistent positions, and judicial estoppel does not apply.

Defendants respectfully request that the Court deny the MTV.

## II.    ARGUMENT

### A.    The Legal Standards for a Motion for Reconsideration Apply.

Although Metro frames this MTV within Fed. R. Civ. P. 54(b), that is a red herring.  (MTV at 4.)  The question is not whether the Court has *authority* to reconsider prior orders, but under what standards it should do so.  Metro all but concedes that the MTV is a reconsideration motion. (MTV at 5-6 (requesting waiver of Local Rule 6.3's timing requirements).)

In the Second Circuit, "[t]he standard for granting such a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "The major grounds justifying reconsideration are an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and quotation marks omitted).

As discussed below, Metro identifies no grounds that meet the Second Circuit's high bar.

### B.    Metro's Motion for Reconsideration is Untimely Under Local Rule 6.3.

Although this Motion is captioned as a "Motion to Vacate" and ostensibly sought under

-2-

Fed. R. Civ. P. 54(b)[1], it is substantively a motion to reconsider the Court's prior order. *See In re Fosamax Prods. Liab. Litig.*, 815 F. Supp. 2d 649, 651-52 (S.D.N.Y. 2011) (denying motion for reconsideration styled as a "request for accommodation"). As such, it is untimely. As Metro concedes in requesting a timing waiver, Local Rule 6.3 governs, providing that "[u]nless otherwise provided . . . a notice of motion for reconsideration must be served within fourteen (14) days after the entry of the court's order being challenged."

Here, Metro filed its motion on June 1, 2026, *eighty-two* (82) days after the Court's Dismissal Order. "As numerous cases from this Circuit have held, the untimeliness of a 'motion for reconsideration under Local Civil Rule 6.3 … is reason enough to deny the motion.'" *Hines v. BMG Rts. Mgmt. (US) LLC*, 711 F. Supp. 3d 200, 204 (S.D.N.Y. 2024) (quoting *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) (concluding motion filed 27 days after order was untimely))[2]; *see also Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 224 n.15 (S.D.N.Y. 2020) (denying untimely motion for reconsideration); *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 419 (S.D.N.Y. 2019) (denying "what is, in effect, an untimely motion for reconsideration").

Metro asks the Court to waive this strict time limit because, it claims, Defendants' design patents are new, material evidence discovered only on April 30, 2026. (*See* MTV at 2, 5-6.) But the evidence is neither "new," because Metro did not exercise diligence (*infra* Sections II.C–D),

---

[1] *But see* MTV at 4-5 (citing case law decided under criminal procedure (*LoRusso*), Fed. R. Civ. P. 60(b) (*Johnson*), and law of the case (*Int'l Brotherhood of Teamsters*), but not authority for using Fed. R. Civ. P. 54(b) as an independent procedural vehicle for seeking reconsideration outside the requirements of Local Rule 6.3 or another federal rule).

[2] *Hines* (which Metro cites) explained that the plaintiff "c[ould not] move for reconsideration under Local Rule 6.3 alone, as such a motion would be untimely." *Id.* It proceeded to analyze the motion under Fed. R. Civ. P. 59(e) and 60. *See id.* at 204-08. Indeed, even if analyzed under Rule 59(e), this Motion is untimely as it was filed after 28 days. *See* Fed R. Civ. P. 59(e).

-3-

nor material, because design patents do not bear on copyright law (*infra* Sections II.E–F).[3]

Metro's MTV is thus untimely and should be denied on this ground alone.

### C.    The Design Patents Are Not "Newly Discovered" Evidence.

Metro's motion fails, foremost, because Defendants' design patents do not constitute "new" evidence. *First*, Dekko's practice of pursuing design patents has been known to Metro since the inception of this dispute. In August 2023, Dekko's counsel sent Metro a letter explicitly referencing its design patents and attaching three patents for receptacles for power and data outlets. (ECF Nos. 22, 22-7, 23; ECF No. 123 at 8-9.) In June 2024, Defendants moved to dismiss in favor of the first-filed *Group Dekko, Inc. v. Metro Light & Power, LLC*, No. 1:23-cv-00465 (the "N.D. Ind. Action"), attaching this correspondence. (*See id.*) Indeed, Mr. Deutsch, Metro's CEO, submits a declaration admitting: "I recalled Furnlite's early correspondence in this dispute (when it was pending in Indiana) included a group of Furnlite design patents, which were inapplicable to my work, and which I quickly disregarded." (ECF No. 121-2 ¶ 12.)

*Second*, the USPTO issued the two patents cited by Metro—U.S. Patent Nos. D1,102,874 and D1,102,875—to Dekko on November 25, 2025; the patents have been publicly available since. This issuance occurred over three months before this Court's Dismissal Order, and more than five months before Metro claims to have first "discovered" them on April 30, 2026. Given Metro's actual, written notice of Defendants' design patenting practices, Metro's lack of diligence in conducting any patent searches, amid ongoing IP litigation, fatally undermines its claim that the design patents are "new evidence." *See Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (no abuse of discretion in denying motion for reconsideration where a declaration

---

[3] Mr. Deutsch, Metro's CEO, filed a declaration with the MTV, asserting that "Furnlite design patents [] were inapplicable to my work"—emphasizing the litigation-driven nature of Metro's newfound belief that design patents are material to a copyright action. (ECF No. 121-2 ¶ 12.)

was not "'new evidence'—evidence that was 'truly newly discovered or could not have been found by due diligence'" (citation omitted)).

*Third*, although Metro argues that the design patent applications ought to have been disclosed before issuance (*see infra* Section II.D), this is irrelevant to whether Metro was diligent between issuance and purported discovery in late April 2026. Moreover, as explained below (*infra* Section II.E), design patents and applications are irrelevant to copyright law, so Defendants' production of applications or patents would not have had substantive effect. Finally, Metro's failure to move to compel documents related to design patents (despite actual knowledge) further reflects both a lack of diligence and the patents' irrelevance to this copyright action.

In sum, as Defendants' patenting practices were known to Metro—and the specific design patents were public before the Court's Dismissal Order and discoverable with due diligence—this is not "new evidence" that may serve to vacate the Dismissal Order.

### D.    Metro's Accusations of Discovery Misconduct Are Unfounded and Could Not, Even If True, Excuse Metro's Lack of Diligence.

Metro's claim that Dekko withheld the design patent applications is a belated attempt to distract the Court from Metro's own lack of diligence by essentially seeking sanctions for a discovery dispute it never raised. *Cf. Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 117 (E.D.N.Y. 2012) (noting that a sanctions motion was not a proper substitute for a motion to compel discovery under local rules).

In fact, Metro's insinuation of discovery misconduct is vastly overblown and misleading. Metro issued exceedingly broad discovery requests, such as demanding "all" documents "concerning, referencing or relating to the Dekko Faceplates" from "any source," to which Defendants lodged proper objections regarding overbreadth, relevance, and confidentiality. (*See* MTV at 6-8; Declaration of Anthony J. Davis ("Davis Dec.") ¶ 3, Ex. A.) Design patent law and

-5-

copyright law are distinct, and Defendants have never violated any duty of candor to the USPTO or taken inconsistent positions. (*See infra* Section II.E–F.) There is no duty of candor to the USPTO (or disclosure obligation to the Court) requiring affirmative disclosure of pending, non-public patent applications to an opposing party in a case where no patent rights have been asserted. *See* 37 C.F.R. § 1.56.

**Background on Discovery.** No patent claims have been asserted by Metro in this case, which shapes the relevance of discovery requested, the propriety of objections made, and the discovery produced before the Court entered a discovery stay on July 30, 2025. (ECF No. 97.)

Before the stay, Metro filed a letter motion to compel discovery on June 20, 2025. (ECF No. 73.) Despite Metro's prior actual knowledge of Defendants' patenting practices (*supra* Section II.C), nowhere did Metro raise any issue with Defendants' purported failure to produce design patents or applications. (*See id.*) Defendants produced over 10,000 pages of documents and opposed Metro's motion as overbroad and disproportionate to the needs of the case. (ECF No. 75.)

At the July 7, 2025, Court conference, Metro likewise did not raise design patents or applications. (ECF Nos. 78, 79.) Nor did Metro raise this issue in the joint letter filed on July 18, 2025, summarizing unresolved discovery issues. (ECF No. 90.) The Court issued a stay on July 30, 2025 (ECF No. 97) and then issued its Dismissal Order on March 11, 2026. (ECF No. 106.)

**Written Discovery.** Metro identifies Requests for Production Nos. 1, 3, and 9 as the supposed specific discovery it claims ought to have resulted in production of the design patent applications that issued in November 2025. (MTV at 7.) It likewise claims Defendants' Initial Disclosures and responses to Interrogatory No. 1 ought to have contained this information. (*Id.* at 7-8.) But Metro conveniently ignores that it served three sets of RFPs seeking 47 categories of

-6-

documents, each with multiple subparts.  (Davis Dec. ¶ 3, 4, Exs. A, B.)  It further ignores that it never expressly requested design patent or application information. The only specific reference to design patent applications is buried as a non-limiting example of "all" documents and communications "relating to Dekko Faceplates or Dekko FPDUs"—a drop in a sea of Metro's vast and overbroad discovery demands.  (MTV at 7.)  Defendants produced over 10,000 pages of documents and, despite document production motion practice, Plaintiff never raised any issue with Defendants or the Court about the production of design patents or applications until filing the instant MTV.

**Rule 30(b)(6) Depositions.**  Metro also takes issue with Defendants' choice of corporate deponent for Topics 7 and 9.  (*See* MTV at 8.)  But those topics do not relate to intellectual property, and Metro fails to explain how this deposition was relevant to whether design patent applications should have been produced.  To the contrary, the Rule 30(b)(6) depositions show Metro never exercised diligence in seeking discovery on design patents.

Metro served a Rule 30(b)(6) Deposition Notice on April 7, 2025, with 29 topics.  (Davis Dec. ¶ 5, Ex. C.) The only topic concerning "intellectual property" was Topic 11, which did not specifically relate to design patents or applications.  It read:

> All information about opinions or letters of counsel regarding Metro's intellectual property or other rights in its Thin bezel faceplate design and/or Group Dekko's or Furnlite's freedom to copy the Thin bezel faceplate design.

While Defendants objected to Topic 11, they agreed to and produced Daniel Hayes as a witness on May 21, 2025.  Mr. Hayes testified, among other things, that part of his responsibility at Dekko was to manage its patent portfolio.  (Davis Dec. ¶ 6, Ex. D.)

But Metro chose not to follow up with any questions about Defendants' patents. *See id.*  If patent discovery were critical (or relevant), as Metro now asserts, counsel would surely have asked about them when questioning Dekko's patent portfolio manager.  The fact that it did not

-7-

undermines Metro's claim that they are relevant now.

\*\*\*

In sum, Metro has been on notice that Defendants secured design patents with similar subject matter since at least August 2023. Metro has known what it requested in discovery and asked in depositions, and it has long been familiar with Defendants' objections on overbreadth and relevance.

Defendants have complied with their discovery obligations at all times. At no point has Metro raised a concern about the lack of discovery concerning patents, despite knowing such information existed. (*See* ECF No. 121-2 ¶ 12 (Metro's CEO admitting knowledge of design patents).) Raising this dispute now is an obvious attempt to sandbag Defendants. Metro could have filed a motion to compel production of design patent applications. It did not. Regardless, design patents are irrelevant to the *Star Athletica* copyright analysis, as discussed below.

### E.    Judicial Estoppel Does Not Apply Because Defendants' Legal Positions With Respect to Design Patents and Copyright Are Not Inconsistent.

Metro's core substantive argument is that Defendants should be judicially estopped from arguing that the faceplates are functional useful articles under copyright law because Defendants obtained design patents for "ornamental" faceplate designs. (MTV at 8-12.) This fundamentally misrepresents intellectual property law. Design patent prosecution under 35 U.S.C. § 171 and copyright "useful article" and the separability analysis under 17 U.S.C. § 101 and *Star Athletica* are categorically different legal inquiries.

As previously explained (ECF No. 123 at 9-10), judicial estoppel does not apply because the legal standards for design patents and copyrights are entirely distinct. *See Lanard Toys Limited v. Dolgencorp LLC*, 958 F.3d 1337, 1341-46 (Fed. Cir. 2020). Courts will not apply judicial estoppel where "the statements at issue do not present an irreconcilable conflict." *Chevron Corp.*

-8-

*v. Donziger*, 833 F.3d 74, 128 (2d Cir. 2016) (*quoting Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004). Whatever "statements" Metro alleges Defendants implicitly made by applying for a design patent cannot present such a conflict because design patent and copyright standards are independent.

*Lanard Toys* is instructive and, as respects patent law, binding. There, the Federal Circuit (1) upheld the district court's application of the design patent "ordinary observer" test, which "consider[s] the ornamental features and analyze[s] how they impact the overall design, 958 F.3d at 1343, and (2) upheld the finding that the same product had "an intrinsic utilitarian function" with no separable features under *Star Athletica*, *id.* at 1345-46. *Lanard Toys* thus demonstrates that characterizing a design as "ornamental" in a design patent application does not establish separability under *Star Athletica*. *See* 958 F.3d at 1341-46. Indeed, securing design patent protection for a product has no bearing on copyright eligibility. *See id.*

Metro is thus wrong that a faceplate is "non-functional" and "eligible for copyright protection on its own," and that "the analysis under *Star Athletica* [] is inapplicable." (*Contra* MTV at 12-13.) Likewise, Metro's argument that Defendants' design patents mean Metro's faceplate cannot be a useful article (or must be separable) is wrong. *See Lanard Toys*, 958 F.3d at 1346 ("In attempting to identify separable features, 'the feature cannot itself be a useful article.'" (quoting *Star Athletica*, 580 U.S. at 415)).

Metro's case law on judicial estoppel merely recites the legal standard but does not apply here, because obtaining a design patent presents no conflict with any position taken in this case. Design patents are regularly obtained for useful articles. (*See* ECF No. 123 at 10 n.2 (noting Defendants' design patents for electrical and USB outlets, which Metro admits are useful articles)); *see also Lanard Toys*, 958 F.3d at 1341-46 (design patent obtained for the entire useful article of

a chalk holder); *accord* Manual of Patent Examining Procedure (MPEP) § 1502 ("In a design patent application, the subject matter which is claimed is the design embodied in or applied to an article of manufacture (or portion thereof) and <u>not</u> the article itself.") (Davis Dec. ¶ 7, Ex. E). Defendants' claimed designs—as indicated by solid lines—are *not* the faceplates themselves. (*Id.*) Metro's arguments are thus not only unsupported by any case law but contrary to the understanding of design patents adopted by the USPTO.

In short, even if the design patents were considered "new evidence" (they are not), they could not support judicial estoppel because Defendants have not taken conflicting positions by pursuing design patent protection while arguing that—under copyright law—faceplates are useful articles that fail the separability analysis under *Star Athletica*.

**F.     Defendants' Design Patents Do Not Affect the Court's Conclusion That Metro's Products Are Not Copyrightable Under *Star Athletica*.**

Based on its assertion that judicial estoppel applies, Metro spends the final two pages of its MTV arguing that Defendants' design patents show that its copyrights are valid. Not so. The Court's Dismissal Order was and remains correctly decided.

As explained above, there is no judicial estoppel, and design patent and copyright law are independent regimes. Defendants' design patents thus do not alter the useful article analysis or the *Star Athletica* framework applied by this Court. (Dismissal Order at 2-3.)

The Court properly held that the faceplates "cannot be perceived as a work of art separate from the useful article—the electrical and USB outlets." (*Id.* at 2.) The Court further noted that "it is unlikely that a simple rectangular shape would qualify as protectable." (*Id.*) Nothing about Defendants' design patents changes this analysis. The design patents merely confirm that Defendants (unlike Metro) sought the appropriate IP protection—a patent under 35 U.S.C. § 171— for the ornamental design of a useful article. Metro's attempt to use Defendants' design patents to

-10-

retroactively manufacture a copyright claim is an improper end-run around *Star Athletica*.

Metro's reliance on *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365 (Fed. Cir. 2006) is unavailing. (MTV at 12.) *Amini*, which predates *Star Athletica*, does not analyze the interplay between design patent validity and the copyright useful-article doctrine; if anything, its separate consideration of copyrights and design patents confirms that the two are distinct regimes. (*Id.* at 1368–72). In any event, *Amini*—Metro's own lead authority—refutes the inference Metro draws. There, the design patent claimed "[t]he ornamental design for a bed frame," which the Federal Circuit held "extends to the overall design of the bed frame," so that "it is the overall 'bed frame' that is patented." (*Id.* at 1371). Yet the court recognized that a bed frame— like bedroom furniture generally—is "a purely utilitarian article." (*Id.* at 1369). That an entire article may be claimed as the subject of a design patent, in solid lines and as a whole, thus reveals nothing about whether the article is useful. Metro's contention that Defendants' design patents— which likewise claim the faceplate designs in solid lines—prove the faceplates are not useful articles accordingly fails on the very authority Metro invokes.

In sum, Defendants' design patents are inapplicable to the copyright analysis, and the Court's reasoning in its Dismissal Order rejecting Metro's copyright claims remains sound.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion to Vacate in its entirety.

-11-

4934-5334-8280, v. 1

Dated: June 26, 2026        Respectfully submitted,

By:   */s/ Anthony J. Davis*
      Anthony J. Davis
      OGC Solutions LLP
      450 Seventh Avenue
      Suite 2205
      New York, NY 10123
      Phone: 201-712-1616
      Fax: 201-712-9444
      Email: adavis@ogcsolutions.com

      Deborah J. Swedlow (*pro hac vice*)
      HONIGMAN LLP
      101 N. Main St, Suite 850
      Ann Arbor, MI 48104
      Phone: (734) 418-4200
      Email: bswedlow@honigman.com

      Aaron D. Bray (*pro hac vice*)
      HONIGMAN LLP
      321 N Clark St, Suite 500
      Chicago, IL 60654
      Phone: (312) 701-9300
      Email: abray@honigman.com

      *Attorneys for Defendants*

-12-

4934-5334-8280, v. 1